This case is called Burke v. County of Randolph, Illinois. I'm the attorney for Michael Burke, who is the plaintiff appellate in this proceeding. This is a case that I would submit started out very simple and became very confused. Let me see if I can sort out this morning that confusion. On November 25, 2009, the plaintiff filed a two-count complaint in Randolph County. Count one was a breach of contract and count two was a mandamus action. Both of these actions were brought against the Randolph County Board of Commissioners. Randolph County operates with three members on its board of commissioners. The dispute involved going back to when Mr. Burke began working for the Randolph County State's attorney, who at the time was Darryl Williamson. Darryl Williamson was elected in 1988, began his first term. Shortly after his election, he went and hired Mr. Burke as an assistant state's attorney. They entered into an agreement for employment. It was reduced to a written instrument, setting forth salary, things of that nature. And Mr. Burke was given by Mr. Williamson the Randolph County personnel policy and procedures, a booklet, which had certain benefits and standard personnel provisions. Mr. Williamson had just come into office and had adopted these procedures. These were not procedures that he wrote. These were procedures the county board put together, and then Mr. Williamson adopted them to apply to his office, which I believe is his letter. Did he have a separate contract, a written contract? I know there's questions that could never be located or anything. I think that would indicate to me, at least, counsel. That was essentially a letter that outlined everything. Was he the only assistant state's attorney that got the letter? That I don't know, your honor. I think he was the only assistant hired at that point. And what does the record show that the letter said, basically? Did it say, my office is hereby adopting the personnel manual? Oh, no. Mr. Williamson gives it to him when he's hired. These are the personnel policies we're going to follow. And then does a letter, something to the effect of kind of a memorialization letter, which we believe is sufficient. So there never was a written contract then? Nothing very formal that says agreement. Your client's suing under the personnel manual, the personnel code of the county that was adopted by his employer, the state's attorney. Correct. And then we feel he had a written agreement to work there. Which was the personnel manual. Yeah, and the letter that Mr. Williamson gave him, saying I'm offering you the job, this is the salary, these are the terms. And the terms are set forth in the personnel manual. Was the personnel manual attached to your complaint? Yes, as an exhibit. We then fast forward 16 years. Mr. Burke has now worked for Mr. Williamson for four terms. We're at 1988. Darrell, Mr. Williamson, I'm sorry, I know all these people very well. Mr. Williamson doesn't run for re-election. The new state's attorney is Randy Rodolfo. Mr. Burke quits, resigns. And types up a memo, November 29, 2004, to the county board of commissioners, explaining that he had, I think, 192 days that he hadn't taken off vacation, sick days. And that he had taken some, and it came down to 152 unused sick days. But the personnel policy said you could get paid for 50. You didn't, no matter how many you had to take. And I should mention that these personnel policies changed over the 16-year period to further complicate matters. The county board of commissioners re-adopts different policies. Mr. Williamson always adheres to, we're going to follow that. So, Mr. Burke does this memo to the county board of commissioners saying he wants his paid sick time. He wants IMRF credit. And he wants his vacation time, unused vacation time that he felt he should be paid for in this policy. Mr. Williamson signs off on it. That it's correct. It's accurate and correct. And it's delivered to the county board of commissioners. Who then basically tell Mr. Burke, we're not paying him. And they say he's an appointed county official. And they're not paying him. How do you respond to the county's claim that an assistant state's attorney is a state employee? That's a real interesting issue. Having been a state's attorney, I've looked at that over the years. And there is some law that says that. But the problem is you still work for the state's attorney. That's who controls your hired, fired, your hours, your duties. And then we have this elaborate funding system where some of the money is county general funds. Some of the money comes in from the state. Things like if you have a prison in your county, they give you some money for that. If you have a state university, as I had at Jackson County, you get some money for that. So it's complicated. But the budget's from the county. The state's attorney's budget comes from the county. And they're the fiscal aid. But the employer is the state's attorney, right? Correct. The only county board it used to be, unless I'm not mistaken, they just authorize the number of assistants the state's attorney can have. Well, they give you enough money. And then you can figure out how many assistants you can get. Right. But they have to authorize you to have three or four or whatever it is. Don't they have to set a specific number in that, what the statute says? I mean, it follows along, too, that they have to have some money somewhere to go ahead and pay them. Correct. But you couldn't hire five assistants unless they used to be, that they would pass an ordinance or resolution saying you get five assistants. I believe so. And then funded the five assistants with either general funds or what came in from the state. Did your client, okay, the contract was, from what I gather, stop me if I'm wrong on it, was basically Williamson adopted the personnel manual that was going to apply to the county employees. Correct. They were going to treat them as the county employees. Did your client receive overtime pay? Did he receive any compensatory time pay? Was he on a 40-hour work week? Any other things that were in that personnel manual that pertained to your client? I'm not positive. Or was he just picking out the black manual? No, I think he basically followed them because it has holidays and it has general operation hours for the county courthouse. He wasn't on a 40-hour work week, I assume. No, no, I think it was whatever the job takes. And he didn't get overtime pay. No, sir. Those two were both in the personnel manual, though, right, or the county employment contract, or you remember? They might have been, Judge. I didn't particularly pay much attention to the provisions that are not in the contract. And, as Judge Webson asked, the salary came roundabout through the state because of the prison facility there? Well, some money for the operation of the state's attorney's office in Randolph was state. There's formulas. And Randolph gets the money because of Menard. Right. And I think they also get some money because of the mental health center, the state facility. But the money wasn't an issue. This is a suit asking for benefits that the assistant state's attorney felt were due him as he's leaving. It's the exit benefits. And we get into court and we thought this was a simple breach of contract and mandates, getting an order that the county commissioners would pay him, especially since Mr. Williamson was in agreement. Okay. So he is pointing to the personnel manual, specifically with regard to his claim for IMRF benefits. And vacation time and sick time, those benefit areas. We end up with an amended complaint, which is what's before the court, mainly because the trial court judge says we really need to get Darryl Williams in this case. So we file a count against Darryl, name him as a nominal party. And the reason we do that is I think the record is that everyone agrees Darryl's in line with Mr. Burke. Darryl supports Mr. Burke. Darryl agrees with the plaintiff that he should get these benefits. But we bring Mr. Williamson in anyhow as a nominal defendant, and then we have the second count is the breach of contract and the mandate. Why wouldn't the present state's attorney, Rodewald, be a necessary party here? Well, Mr. Burke never worked for him. But he's claiming the office of the state's attorney. I mean, I'm not talking about individually. I'm talking just as the sitting state's attorney. The office of the state's attorney of Randolph County is what was my employer. Therefore, they're the ones that owe me this. Well, see, we felt it was the Board of Commissioners because they've got the money. The state's attorney has no money. The state's attorney only has what the county board gives them. And then the state throws some in. But state's attorneys never get their hands on money. It's always the county commissioners. So we thought that was the simple avenue. And clearly the county manual didn't provide for accumulated sick time or service with IMRF. This was a separate agreement he claimed to have with Williams. No, no, no. The manual goes into it. It does? Yeah. And it says that you can get your- Accumulated sick time. Well, it's got a whole sick time provision in it. It's attached as Exhibit A to the first amended complaint. It's in your brief. In the appendix beginning at A17. And the manual also talks about IMRF time? Yes, because let's say you had three months owed to you for sick time. Then you should be on IMRF three more months. Okay. So that's going to affect your IMRF pension. And it's covered in the manual? Yeah. It says something about an accumulated IMRF time. Okay. And they wouldn't give them that either. But where we eventually got was a motion by the present state's attorney's office to dismiss. And their argument, it was a 615 motion, was that when we couldn't find any written document that we hadn't properly complied with 735 ILCS 5 backslash 2-606, which is a simple provision that basically says if you can't find the written instrument, you do an affidavit. And you attach that to your complaint. That's what Mr. Burke did. And in that affidavit, he essentially did that. And the written instrument, you claim, was the letter more or less confirming that you're going to be working under the personnel policy? Correct. And that you're hired. Right. It's kind of like one of these memorialization letters, I call them. So you're saying the combination of the affidavit reciting the contents of the letter plus the personnel manual, which was attached, are sufficient to defeat the 2615 motion? Well, that and more, Your Honor. Because what happens, and the pivotal day here is when we're in court in July of last year. And Mr. Williamson shows up. Since he's now been added by the new Comp 1 and the First Amendment. Mr. Williamson shows up and tries to explain to the trial court judge he doesn't have an attorney. And he's quit practicing. He doesn't want to represent himself. He's out of the practice of law. He's on that IMRF that I was talking about. And he's also contacted insurance defense counsel for the county. And they don't want anything to do with this case. And he tries to explain to the trial judge that he doesn't want Mr. Rotowall's office representing him because he has a conflict with them. He disagrees with their position. He explains he agrees with Mr. Burke's position. He wants a continuous. He wants time to get legal. Did the trial judge argue to name him as the nominal defendant? Suggested. Suggested. Okay. So that's the only reason why he's in there. On reflection, he probably should have been in there. So we put him in the First Amendment. I mean, he is involved. I mean, he was the employer. And, again, unless you consider the state. And he's being sued in his ex-official capacity, right? Right. He's not personally liable for it. You're not making any claims for any of that. No, no. So, I mean, he wanted the county to get him a lawyer. And then the judge is like, no, I'm not going to give you a continuous. And then the judge wants the state's attorney to represent Mr. Williamson on the count that he's named in. Which I don't understand how that could happen. Well, what basis? I mean, obviously you're not here representing Williamson. But what possible basis would he have to object to who the county is going to provide an attorney for? He can't pick and choose who he wants as an attorney there unless he wants to go out and hire his own probably. But he's got a conflict with him. Pardon me? He's got a conflict with the present state's attorney's office, which is advocating that Mr. Burke not get these benefits. And Williamson's saying he should get them. Right. Pretty much a conflict to me. And nobody wants to hear him. And we go on. And then the judge grants the motion dismissing all the counts, including the count against Mr. Williams, which was count one. Count two was against the board of commissioners. Count three, against the board of commissioners. Williamson could have come in and just confessed it, right? If he ever got to that point. But he never had filed an answer because he was working on getting an attorney. And then nobody was trying to default him. They were all giving him sufficient time. So again, Your Honors, this is a simple case that I think got incredibly complicated and confused. And then they even attacked the mandamus count, which the 615 motion never went to. The 615 motion was all about whether the affidavit was sufficient in lieu of the lost document. What we believe is a written contract in letter form from 1988. No one seems to know where it is. And then we have lots of provisions for proving up lost documents. It's an evidentiary matter. It's not a pleading matter. Is that your field from the 615 motion? Right. Correct. That's the only thing, right? Yeah, judged throughout everything, all three counts, including Mr. Williamson's count. On the 615 motion? Yes, sir. If I could clarify any more, I would be happy to answer further questions, Your Honors. We've answered our questions, I think. Any further? Thank you, Counsel. Thank you, Your Honors. We appreciate it. We'll take the case under advisement.